

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JIMMY KINSLOW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: 06 C 4023 |
| v. | ) | |
| | ) | Suzanne B. Conlon, Judge |
| TRANSCOR AMERICA, LLC, WILLARD ELYEA, M.D., FRANK PULLARA, M.D., ERMA SEDILLO, SHANNON McREYNOLDS, ROGER WALKER, EDWARD MCNEILL, and DARIA MCCARTHY-SMITH, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jimmy Kinslow, a state inmate, brings suit under 42 U.S.C. § 1983. Kinslow alleges his constitutional rights were violated because he was not provided proper medical treatment during an interstate transfer from an Illinois Department of Corrections ("IDOC") facility in Joliet to a New Mexico Corrections Department ("NMCD") facility in Santa Fe. Kinslow sues various operations directors, medical directors, general managers, employees of IDOC and NMCD, and TransCor America, LLC ("TransCor"), the company who transported Kinslow between facilities. TransCor moves to dismiss the complaint for failure to state a claim. For the reasons set forth below, the motion is granted, and the case as to TransCor is dismissed without prejudice.

## BACKGROUND

Kinslow has been a state inmate for at least the past eleven years.[1] Compl. at ¶ 13. In June 2000, while housed at Stateville Correctional Center in Joliet, Illinois, Kinslow was diagnosed with an advanced liver disease caused by the Hepatitis C virus. *Id.* at ¶ 14. Hepatitis C is a serious medical condition and will likely cause Kinslow's death if untreated. *Id.* at ¶ 53. In May 2004, defendant Dr. Willard Elyea, IDOC's medical director, determined that Kinslow needed chemotherapy treatments to combat his hepatitis. *Id.* at ¶ 17. Kinslow's treatments started in May 2004 and were scheduled to continue one full year. *Id.*

Kinslow's treatment consists of taking two drugs in combination: Peg-Intron and Rebetol. *Id.* at ¶ 18. Peg-Intron is a liquid/powder mixture that must be precisely measured, mixed, and then injected subcutaneously. *Id.* ¶¶ 18, 38. The drug must be injected once a week, on the same day and time each week. *Id.* Peg-Intron injections are generally given by medical staff because of the exacting way the drug must be administered. *Id.* Rebetol is a pill that must be taken once daily with food. *Id.* Both Peg-Intron and Rebetol must be kept refrigerated at all times or they may spoil. *Id.* at ¶¶ 19, 38. In addition, patients must be on a proper diet and well hydrated when taking the drugs. *Id.* at ¶ 22. If Peg-Intron and Rebetol are not taken precisely as prescribed, *i.e.*, at the proper times, in the proper amounts, and under the proper circumstances, the treatment regime as a whole may lose its effectiveness or fail completely. *Id.* at ¶¶ 23, 51.

In October 2004, well into Kinslow's treatment schedule, defendant Dr. Frank Pullara, NMCD's medical director, determined Kinslow should be transferred from IDOC to NMCD. *Id.* at

---

[1] The facts are drawn from the complaint. The court accepts all well-pleaded allegations as true for purposes of the motion to dismiss. *See Cler v. Illinois Educ. Ass'n*, 423 F.3d 726, 729 (7th Cir. 2005).

¶ 26. The reason for the transfer was that Kinslow's treatments were cheaper if administered in New Mexico. *Id.* Dr. Elyea approved the transfer. *Id.* at ¶ 32. Defendants Edward McNeill and Daria McCarthy-Smith, IDOC employees, arranged for Kinslow's transfer on behalf of IDOC. *Id.* at ¶¶ 10, 11, 25. Defendants Erma Sedillo and Shannon McReynolds, NMCD's director of operations and general manager, facilitated the transfer on behalf of NMCD. *Id.* at ¶¶ 8, 9, 27. One or all of them contracted with TransCor to physically transport Kinslow to New Mexico. *Id.* at ¶¶ 28, 30. All defendants knew Kinslow was in the middle of his chemotherapy treatments when they caused his transfer. *Id.* at ¶¶ 26-30, 32. Defendants also knew that interrupting Kinslow's ongoing treatment for a cross-country trip would compromise the treatment's effectiveness. *Id.*

On October 17, 2004, Kinslow was placed on a bus operated by TransCor bound for Santa Fe, New Mexico. *Id.* at ¶ 33. The bus trip lasted six days, although a direct trip from Joliet to Santa Fe would have taken less than 24 hours. *Id.* at ¶ 41. There was no refrigeration available during the trip for Kinslow's Peg-Intron and Rebetol. *Id.* at ¶¶ 33, 44. Although the medication was placed on ice before leaving Illinois, TransCor employees dumped the ice out because the container was leaking. *Id.* at ¶¶ 34, 35. Medical personnel were not available to administer Kinslow's weekly treatment, which was scheduled for the evening of October 18th. *Id.* at ¶¶ 37, 44. Kinslow was told by TransCor staff that he would have to mix and inject the Peg-Intron himself. *Id.* at ¶ 37. Kinslow attempted to do so, even though he had no medical training or experience and did not know how to prepare the proper dosage. *Id.* at ¶ 38.

Kinslow experienced a severe reaction almost immediately after injecting himself. *Id.* at ¶ 39. He had pain and cramps, started sweating, and felt nauseous. *Id.* His reaction increased. He

vomited, could barely walk, and had a swollen abdomen.[2] *Id.* Kinslow asked to be taken to a doctor, but TransCor employees told him they did not have time to stop the trip to find one. *Id.* at ¶ 40. When the bus stopped for overnight stays at local jails, he repeated his requests for medical assistance. *Id.* at ¶ 43. He was told only TransCor employees could provide assistance. *Id.* at ¶ 40. He was without medical attention and in "agony" for four days of the trip. *Id.* at ¶ 42.

During the last three days of the trip, Kinslow was kept in full restraints and forced to maintain a painful position for hours at a time despite his medical condition. *Id.* at ¶ 45. He was unable to take his Rebetol during this time because a TransCor driver spilled the pills on the bus's dirty floor. *Id.* at ¶ 46. Also during this time, TransCor employees refused to provide Kinslow with Clonazepam, a drug he took daily to reduce anxiety and insomnia caused by the Peg-Intron/Rebetol treatments. *Id.* at ¶¶ 21, 47. In addition, he was not provided with the proper diet or sufficient water. *Id.* at ¶ 48.

Kinslow's chemotherapy treatments failed because he was not provided proper medical treatment during his transfer. *Id.* at ¶ 51. NMCD medical staff thereafter denied him further treatment for Hepatitis C because his previous treatment regime failed. *Id.* at ¶ 52. Other possible hepatitis treatments are now less likely to succeed. *Id.* His liver disease continues to deteriorate, and without treatment he will likely die. *Id.* at ¶ 53.

---

[2]Kinslow believes the medication spoiled because it was not properly refrigerated and this caused his reaction. Compl. at ¶ 38. It is possible Kinslow experienced side effects from taking an improperly-mixed dosage. *Id.* at ¶ 23. These side effects include flu-like aches, fever, rapid heartbeat, chest pains, shortness of breath, insomnia, and anxiety. *Id.* at ¶¶ 20, 21. If not properly diagnosed and treated, the side effects are potentially fatal. *Id.* at ¶ 23.

**ANALYSIS**

Kinslow brings a one count complaint against defendants for failure to treat his medical condition. He contends defendants are liable under 42 U.S.C. § 1983 for violations of his Eighth and Fourteenth Amendment rights. TransCor moves to dismiss based on Kinslow's (1) failure to allege he exhausted all administrative remedies; and (2) failure to state a claim under § 1983, because the complaint (a) does not allege TransCor employees acted with "deliberate indifference" and (b) does not allege TransCor's violations were a "policy or custom."

## I. Motion to Dismiss Standards

A motion under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint. *Cler*, 423 F.3d at 729. Dismissal is warranted only if "no relief could be granted under any set of facts that could be proved consistent with the allegations." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). A plaintiff does not need to plead particular legal theories or facts to state a claim; all that is required is "a short plain statement of the claim that will give the defendant[s] fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* (quoting *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993)); *see also* FED. R. CIV. P. 8(a)(2). The court must take a plaintiff's factual allegations as true and draw all reasonable inferences in his favor. *Id.* A plaintiff can plead himself out of court if he alleges facts showing he has no claim. *Thomas v. Farley*, 31 F.3d 557, 558 (7th Cir. 1994).

## II. Exhaustion of Administrative Remedies

TransCor argues the complaint should be dismissed because Kinslow fails to allege he exhausted his administrative remedies. TransCor relies on the Prison Litigation Reform Act of 1995, which states "[n]o action shall be brought with respect to prison conditions under section 1983 . . .

5

by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). TransCor contends the complaint is deficient because it "does not even mention the administrative remedies available to Kinslow, much less that he exhausted those remedies before bringing the instant action." Memo. at 3.

TransCor misconstrues the Prison Litigation Reform Act in the context of a motion to dismiss. Failure to exhaust administrative remedies is an affirmative defense under Fed. R. Civ. P. 8(c). *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002); *Massey v. Helman ("Massey I")*, 196 F.3d 727, 735 (7th Cir. 1999). Defendants have the burden of pleading and proving affirmative defenses. *Massey I*, 196 F.3d at 735. Consequently, Kinslow is under no obligation to anticipate or plead in anticipation of TransCor's defenses. *See Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) (motions under Rule 12(b)(6) are not appropriate responses to the invocation of affirmative defenses). The complaint cannot be dismissed for omitting information that TransCor has the burden to raise.

TransCor's argument would be different if Kinslow had pleaded himself out of court by admitting he failed to exhaust administrative remedies. *Id.* (plaintiff pleads himself out of court when he "admits all the ingredients of an impenetrable defense"). However, the complaint contains no allegations suggesting he failed to exhaust administrative remedies. Indeed, the complaint contains no allegations on the subject at all. The cases cited by TransCor, including the case involving Kinslow before this court, are inapposite because they address plaintiffs who pleaded themselves straight into an affirmative defense. *See Massey v. Wheeler ("Massey II")*, 221 F.3d 1030, 1034 (7th Cir 2000) (plaintiff pleaded there were no available administrative remedies and any claimed remedies were a sham); Compl. at Ex. 1 ("[i]n Kinslow's prolix complaint, he extensively

describes administrative remedies he pursued against each defendant"); *see also Lewis v. Cook County Corr. Officers*, No. 01 C 6318, 2002 WL 31133175, at *2 (N.D. Ill. July 19, 2002) (Gottschall, J.) ("[t]o be sure, language in [*Massey II*] suggests that it is the plaintiff who has the burden of pleading exhaustion . . . however, [this] must be read in context . . . [p]laintiff pleaded himself out of court").

**III. Section 1983 Claim**

**A. Legal Standards**

Section 1983 provides a cause of action for plaintiffs "'depriv[ed] of any rights, privileges, or immunities secured by the Constitution,' by persons acing under color of state law." *Eades v. Thompson*, 823 F.2d 1055, 1060 (7th Cir. 1987) (quoting 42 U.S.C. § 1983). Deliberate indifference to a prisoner's serious medical needs constitutes "unnecessary and wonton infliction of pain" proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim, a prisoner must allege "(1) he had a serious medical need, and (2) the defendants were deliberately indifferent to it." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). A prisoner must demonstrate that defendants acted with a "sufficiently culpable state of mind" to satisfy the deliberate indifference component. *Farmer v. Brennen*, 511 U.S. 825, 834 (1994); *see also Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). The defendants must "know of and disregard an excessive risk to inmate health; indeed they must 'both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and 'must also draw the inference.'" *Greeno*, 414 F.3d at 653 (quoting *Farmer*, 511 U.S. at 837). Additionally, "a factfinder may conclude that a [defendant] knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

A private corporation acting under color of state law is treated as though it were a municipality for purposes of § 1983. *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002). *Respondeat superior* will not suffice to impose § 1983 liability on a municipality; the municipality's policy must be the source of the violation. *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995). There are three ways a municipality's policy can violate an individual's constitutional rights: (1) an express policy; (2) a widespread practice that, although not authorized by written law, is so permanent and well settled it constitutes a custom or usage with the force of law; and (3) an allegation that the constitutional injury was caused by a person with final policy making authority. *Id.*; *see also Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 735 (7th Cir. 1994) (superceded by statute on unrelated issue).

## B. Deliberate Indifference

TransCor argues Kinslow fails to state a claim because he does not allege facts demonstrating "deliberate indifference." Specifically, TransCor states the complaint must allege that TransCor's employees knew the severity of Kinslow's medical condition or the effect their non-treatment would have on Kinslow. Memo. at 5. According to TransCor, Kinslow's failure to plead the "state of mind" of TransCor's employees dooms his complaint. *Id.*

Kinslow is not required to plead any particular facts to state his claim. *See DeWalt*, 224 F.3d at 612. All he is required to do is provide a plain statement of the claim that gives TransCor notice of the relief sought. *Id.* The complaint specifically alleges the following: Kinslow was transported on a six-day bus trip operated by TransCor. Compl. at ¶¶ 33, 41. TransCor employees accepted an ice chest containing two of his medications from a nurse at Stateville Correctional Center. *Id.* at ¶

34. The employees dumped out the ice and placed the medication on the bus's hot floor. *Id.* at ¶ 35, 38. When Kinslow requested the medications be administered, he was told to mix and inject them himself. *Id.* at ¶ 37. He was provided no assistance and medical personnel were not present. *Id.* Immediately after injecting himself, he suffered a reaction that made him vomit, unable to walk, and caused his abdomen to swell. *Id.* at ¶ 39. He made repeated and continuous requests to TransCor employees for medical assistance, but his requests were ignored. *Id.* at ¶ 40. Over the next four days, he was denied other prescription medication and forced to sit shackled in agony. *Id.* at ¶¶ 42, 44. TransCor's actions caused his chemotherapy treatments to fail. *Id.* at ¶ 51.

These allegations are clearly sufficient to put TransCor on notice of Kinslow's theory of relief under § 1983. Kinslow's theory of relief is that his serious medical condition was obvious; TransCor's employees ignored his condition. TransCor's deliberate indifference can be inferred from these allegations. *See Farmer*, 511 U.S. at 842; *see also Eades*, 823 F.2d at 1061 (allegations of obviously draining sutures and complaints by prisoner enough to defeat a motion to dismiss); *Stokes v. Sood*, No. 01 C 3778, 2001 WL 1518529, \*\*3-4 (N.D. Ill. Nov. 29, 2001) (Hart, J.) (even a lay person with no medical training knows extreme pain in the abdominal region accompanied by constipation requires treatment). Therefore, the complaint states a claim of deliberate indifference to Kinslow's serious medical needs.[3]

---

[3]The cases cited by TransCor are distinguishable from this case and are therefore unpersuasive. In *Zentmyer v. Kendall Co.*, 220 F.3d 805, 807 (7th Cir. 2000), the court did not address a motion to dismiss, and in *Summers v. Sheahan*, 883 F. Supp. 1163, 1168-69 (N.D. Ill. 1995) (Castillo, J.), the plaintiff pleaded himself out of court.

## C. Custom or Policy

TransCor contends the complaint is also deficient because it does not allege TransCor itself, as opposed to its employees, is liable for Kinslow's harm. According to TransCor, Kinslow must affirmatively plead his constitutional violations were part of TransCor's "custom or policy." Memo. at 6. Kinslow responds that he has pleaded a custom or policy by alleging facts demonstrating that "the decisions at issue were made by the person within [TransCor] who had final decision-making authority." Resp. at 11. Kinslow contends the complaint adequately puts TransCor on notice it is liable for its corporate decisions. *Id.* at 12.

The complaint contains no allegations suggesting TransCor's custom or policy caused Kinslow's lack of medical treatment. The complaint alleges Kinslow was mistreated by TransCor's *employees* during his transfer, but there are no allegations mistreatment was a result of the policies or customs of TransCor, the *entity*. *See e.g.*, Compl. at ¶¶ 34, 35, 37, 43, 46. Kinslow blurs the distinction by generally referring to TransCor, but the actions described implicate only TransCor's employees. *Id.* at ¶¶ 41, 47, 48. Although Fed. R. Civ. P. 8(a) does not require detailed factual pleadings, Kinslow's allegations must directly link TransCor to the factual cause of his injury. *See McTigue*, 60 F.3d at 382. The complaint fails to provide a connection between TransCor custom or policy and its employees' actions. Therefore, the complaint is deficient and must be dismissed. *See Looper Maint. Serv., Inc. v. City of Indianapolis*, 197 F.3d 908, 913 (7th Cir. 1999) (motion to dismiss warranted when plaintiff "failed to allege that any named *individual* possessed final policymaking authority and that such an *individual* denied him a constitutional right within the meaning of 42 U.S.C. § 1983"); *McTigue*, 60 F.3d at 382-83 (granting motion to dismiss where plaintiff failed to allege factual basis supporting municipal policy or custom).

## C. Custom or Policy

TransCor contends the complaint is also deficient because it does not allege TransCor itself, as opposed to its employees, is liable for Kinslow's harm. According to TransCor, Kinslow must affirmatively plead his constitutional violations were part of TransCor's "custom or policy." Memo. at 6. Kinslow responds that he has pleaded a custom or policy by alleging facts demonstrating that "the decisions at issue were made by the person within [TransCor] who had final decision-making authority." Resp. at 11. Kinslow contends the complaint adequately puts TransCor on notice it is liable for its corporate decisions. *Id.* at 12.

The complaint contains no allegations suggesting TransCor's custom or policy caused Kinslow's lack of medical treatment. The complaint alleges Kinslow was mistreated by TransCor's *employees* during his transfer, but there are no allegations mistreatment was a result of the policies or customs of TransCor, the *entity*. *See e.g.*, Compl. at ¶¶ 34, 35, 37, 43, 46. Kinslow blurs the distinction by generally referring to TransCor, but the actions described implicate only TransCor's employees. *Id.* at ¶¶ 41, 47, 48. Although Fed. R. Civ. P. 8(a) does not require detailed factual pleadings, Kinslow's allegations must directly link TransCor to the factual cause of his injury. *See McTigue*, 60 F.3d at 382. The complaint fails to provide a connection between TransCor custom or policy and its employees' actions. Therefore, the complaint is deficient and must be dismissed. *See Looper Maint. Serv., Inc. v. City of Indianapolis*, 197 F.3d 908, 913 (7th Cir. 1999) (motion to dismiss warranted when plaintiff "failed to allege that any named *individual* possessed final policymaking authority and that such an *individual* denied him a constitutional right within the meaning of 42 U.S.C. § 1983"); *McTigue*, 60 F.3d at 382-83 (granting motion to dismiss where plaintiff failed to allege factual basis supporting municipal policy or custom).

## CONCLUSION

For the reasons set forth above, Kinslow fails to state a claim under 42 U.S.C. § 1983. Therefore, TransCor's motion to dismiss is granted. TransCor is dismissed without prejudice.

ENTER:

Suzanne B. Conlon
Suzanne B. Conlon
United States District Judge

October 10, 2006