IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JIMMY KINSLOW, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No.: 06 C 4023 |
| v. | ) |
| | ) Suzanne B. Conlon, Judge |
| TRANSCOR AMERICA, LLC, WILLARD ELYEA, M.D., FRANK PULLARA, M.D., ERMA SEDILLO, SHANNON McREYNOLDS, ROGER WALKER, EDWARD McNEILL, DARIA McCARTHY-SMITH, SANDRA ALBERD, LONYA ALLEN, JAMIE BATSON, RONALD DICKERSON, GLENN EVANS, JEFFREY FIELDER, ANGELA HAMILTON, BRAD HAMILTON, JAMES HARDING, JACKIE HARRIS, DARRELL HEATON, TIM JACKSON, MR. MOORE, JACKI STURGILL, and CHARLES WESTBROOK, | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Jimmy Kinslow, a state inmate, brings suit under 42 U.S.C. § 1983, alleging his constitutional rights were violated because he was not provided proper medical treatment during an interstate prison transfer. Kinslow sues various employees of the Illinois and New Mexico prison systems; and TransCor America, LLC, the company who transported him between facilities, and its employees. Three groups of defendants filed motions to dismiss Kinslow's amended complaint: Dr. Frank Pullara, Erma Sedillo, and Shannon McReynolds ("the New Mexico defendants"); Dr. Willard Elyea, Roger Walker, Edward McNeill, and Daria McCarthy-Smith ("the Illinois defendants"); and TransCor. For the reasons set forth below, the New Mexico defendants' motion is granted, and the remaining motions are denied.

## BACKGROUND

The facts are drawn from the amended complaint. The court accepts all well-pleaded allegations as true for purposes of the motions to dismiss. *See Cler v. Illinois Educ. Ass'n*, 423 F.3d 726, 729 (7th Cir. 2005). In June 2000, while housed at Stateville Correctional Center in Joliet, Illinois, Kinslow was diagnosed with an advanced liver disease caused by hepatitis. Dr. Willard Elyea, Illinois Department of Corrections' medical director, prescribed Kinslow chemotherapy treatments to combat his illness. The treatments began in May 2004 and were scheduled to continue for one year.

Kinslow's treatments are two-fold. First, he is injected with Peg-Intron, a liquid/powder mixture that must be precisely measured, mixed, and then immediately administered. The injections are given once a week, on the same day and time each week. Generally, the injections are given by medical staff because of the exacting way they must be prepared. Second, Kinslow takes one Rebetol pill every day with food. Both medications must be refrigerated at all times. Patients must be kept on a proper diet and well-hydrated during treatments. If Peg-Intron and Rebetol are not taken precisely as prescribed, *i.e.*, at the proper times, in the proper amounts, and under the proper circumstances, the treatment regime may lose its effectiveness, fail completely, or cause severe side effects.

In October 2004, at approximately the halfway point in Kinslow's treatment, Dr. Frank Pullara, New Mexico Corrections Department's medical director, determined Kinslow should be transferred to New Mexico. Dr. Elyea approved the transfer. Edward McNeill and Daria McCarthy-Smith, Illinois Department of Corrections' employees, requested or arranged for Kinslow's transfer. Erma Sedillo and Shannon McReynolds, New Mexico Corrections Department's director of

operations and general manager, facilitated the transfer on New Mexico's behalf. McReynolds contacted TransCor and arranged for Kinslow's physical transport to New Mexico. McReynolds Aff. at ¶¶ 7-9. The Illinois and New Mexico defendants knew Kinslow was in the midst of his chemotherapy and that interrupting it for a cross-country trip would compromise the treatment's effectiveness. Yet they went ahead with the transfer anyway. Roger Walker, Illinois Department of Corrections' director, failed to establish procedures ensuring Kinslow's medical needs were met during the trip.

On October 17, 2004, Kinslow was placed on a bus operated by TransCor bound for Santa Fe. TransCor employees planned the route and were physically present on the bus. The trip lasted six days, even though direct travel would have taken less than twenty-four hours. There was no refrigeration available on the bus for Kinslow's medication. Although the PegIntron and Rebutol were placed on ice before leaving Illinois, a TransCor employee dumped the ice out because the container was leaking. Medical personnel were not available to administer Kinslow's PegIntron injection, which was scheduled for the evening of October 18th. TransCor staff told Kinslow that he would have to mix and inject the drug himself. Kinslow attempted to do so, even though he had no medical training or experience and did not know how to prepare the proper dosage.

Kinslow experienced a severe reaction almost immediately after injecting himself. He had pain and cramps, started sweating, and felt nauseous. He then vomited, could barely walk, and his abdomen swelled. Kinslow asked to be taken to a doctor; TransCor employees responded that they did not have time to find one. When the bus stopped for overnight stays at local jails, Kinslow repeated his requests for medical assistance. He was told only TransCor employees could provide him care. As a result, he suffered a negative reaction for four days without medical attention.

Additionally, a TransCor employee spilled Kinslow's Rebutol pills on the bus floor. TransCor employees also refused to provide Kinslow with Clonazepam, a drug that reduced anxiety and insomnia caused by the treatments. Kinslow believes his reaction was caused by spoiled medication, the result of inadequate refrigeration. It is also possible he experienced side effects from taking an improperly-mixed dosage.

Kinslow's chemotherapy treatments failed as a result of the lack of medical care he received during the interstate transfer. The New Mexico Corrections Department denied Kinslow additional treatments based on the failure. If Kinslow is provided future treatments, they are unlikely to succeed. Kinslow's liver disease continues to deteriorate; without treatment he will likely die.

## DISCUSSION

Kinslow's amended complaint alleges defendants are liable under 42 U.S.C. § 1983 for violations of his Eighth and Fourteenth Amendment rights. Three groups of defendants filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and (6). The New Mexico defendants assert the complaint should be dismissed because: (1) the court lacks personal jurisdiction over them; (2) the complaint fails to allege deliberate indifference; (3) Kinslow failed to exhaust administrative remedies; and (4) this lawsuit is duplicative of litigation pending in New Mexico. The Illinois defendants' also move to dismiss for failure to plead deliberate indifference and on *res judicata* grounds. TransCor contends Kinslow fails to state a claim because the complaint does not allege the actions of its employees were made pursuant to the corporation's "policy or custom."

### I.    Motion to Dismiss Standards

Fed. R. Civ. P. 12(b)(2) allows a defendant to move to dismiss claims when the court lacks personal jurisdiction. The plaintiff bears the burden of proving the jurisdictional requirements are

4

met. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). The Court may consider affidavits, depositions, and other documents outside the pleadings to determine whether jurisdiction exists. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir.1987) (superceded by statute on other grounds). A plaintiff need only make a *prima facie* showing that jurisdiction is proper. *Michael J. Neuman & Assoc., Ltd. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 724-25 (7th Cir. 1994). The court must resolve all factual disputes in the plaintiff's favor and accept as true all uncontroverted allegations made by both parties in determining whether plaintiff has met his burden. *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983); *Allman v. McGann*, No. 02 C 7442, 2003 WL 1811531, at *2 (N.D. Ill. Apr. 4, 2003) (Norgle, J.).

A motion under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint. *Cler*, 423 F.3d at 729. Dismissal is warranted only if "no relief could be granted under any set of facts that could be proved consistent with the allegations." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). A plaintiff need not plead particular legal theories or facts to state a claim; all that is required is "a short plain statement of the claim that will give the defendant[s] fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* (quoting *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993)); *see also* FED. R. CIV. P. 8(a)(2); *Simpson v. Nickel*, 450 F.3d 303, 305 (7th Cir. 2006) (plaintiffs not required to allege factual or legal "elements" to state a claim). The court takes plaintiff's factual allegations as true and draws all reasonable inferences in his favor. *Id.* However, a plaintiff can plead himself out of court if he alleges facts showing he has no claim. *Thomas v. Farley*, 31 F.3d 557, 558 (7th Cir. 1994).

## II. Defendants' Arguments for Dismissal

### A. Lack of Personal Jurisdiction

The New Mexico defendants move to dismiss the amended complaint for lack of personal jurisdiction. It is Kinslow's burden to show the court has personal jurisdiction over the parties. *See RAR*, 107 F.3d at 1276. Kinslow must show that bringing the New Mexico defendants to court in this district satisfies: (1) the requirements of due process, characterized as "traditional notions of fair play and substantial justice;" and (2) that the defendants are amenable to service of process. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *United States v. De Ortiz*, 910 F.2d 376, 381-82 (7th Cir. 1990).

Because this is a federal question case, the due process requirement is met if "each party ha[s] sufficient minimum contacts with the United States as a whole rather than [a] particular state." *Olsen v. Jenkens & Gilchrist*, No. 05 C 4216, 2006 WL 3354132, at *8 (N.D. Ill. Nov. 17, 2006) (Castillo, J.) (citing *De Ortiz*, 910 F.2d at 382). The New Mexico defendants do not dispute they have sufficient contacts with the United States. The parties' dispute lies with the second jurisdictional element: whether defendants are amenable to service of process. Fed. R. Civ. P. 4(k) governs the court's inquiry. *Id.* Rule 4(k) provides that service is effective to establish jurisdiction over defendants "who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located," or "when authorized by a statute of the United States." FED. R. CIV. P. 4(k)(1)(A) and (D). Section 1983 does not authorize nationwide service; therefore, the court's jurisdiction is governed by the forum state's long-arm statute. *See Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 108 (1987); *Robinson v. SABIS Ed. Sys., Inc.*, No. 98 C 4251, 1999

WL 412642, at *3 (N.D. Ill. May 28, 1999) (Coar, J.) (section 1983 does not provide for nationwide service of process).

The Illinois long-arm statute contains a "catch-all" provision that "permits its courts to exercise jurisdiction on any basis permitted by the Illinois and United States Constitutions." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 714-15 (7th Cir. 2002) (citing 735 ILCS 5/2-209(c)); *see also Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000). The Seventh Circuit has found no "operative difference" between the limits imposed by the Illinois constitution and the federal limits on personal jurisdiction. *Id.* at 715 (citing *RAR*, 107 F.3d at 1276). Accordingly, personal jurisdiction analysis collapses into a federal due process inquiry. *Id.* at 715-16; *Watchworks, Inc. v. Total Time, Inc.*, No. 01 C 5711, 2002 WL 424631, at *4 (N.D. Ill. Mar. 19, 2002) (Lefkow, J.). A finding of personal jurisdiction therefore requires the following:

> [T]he defendant must have minimum contacts with the forum state such that the maintenance of the suit does not offend fair play and substantial justice. Those contacts may not be fortuitous. Instead, the defendant must have purposefully established minimum contacts within the forum State before personal jurisdiction will be found to be reasonable and fair. Crucial to the minimum contacts analysis is a showing that the defendant should reasonably anticipate being haled into court [in the forum State], because the defendant has purposefully avail[ed] itself of the privilege of conducting activities there.

*Id.* at 716 (internal quotations and citations omitted); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985); *International Shoe*, 326 U.S. at 316.

The federal test is met by demonstrating "general" or "specific" personal jurisdiction. *Id.* at 713. General jurisdiction occurs when the defendant has "continuos and systematic general business

contacts" with the forum state. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003). In determining specific jurisdiction, the court asks whether it is "fundamentally fair" to require the defendant to submit to jurisdiction with "respect to this litigation." *Id.* at 780 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). The most important factor is foreseeability; "that is, whether the defendant[s] could have anticipated being haled into the courts of the state." *Olsen*, 2006 WL 3354132, at *9. Purposeful availment of the privileges of conducting activities in the state makes the defendant amenable to jurisdiction. *Purdue*, 338 F.3d at 780. In making the determination, courts examine whether defendants have deliberately engaged in significant activities or created continuing obligations within the forum state. *Id.* at 780-81.

The parties ignore general jurisdiction, focusing their briefs on specific jurisdiction. The New Mexico defendants argue their limited contacts with Illinois, *i.e.*, two or three telephone calls to their Illinois Department of Corrections counterparts, do not establish jurisdiction. Kinslow responds that defendants knowingly disregarded his serious medical condition when they approved and arranged his transfer, thereby "directly targeting" him with their actions. Pl. Resp. at 6. Because defendants' own actions gave rise to the litigation, they had "fair warning" they would be haled into an Illinois court. *Id.*

The New Mexico defendants advance the better argument. Review of the amended complaint makes clear that defendants had only minimal contacts with Illinois. Am. Compl. at ¶¶ 28-30 (no specific contacts alleged, only that defendants arranged and planned Kinslow's transfer). The affidavits provided by Dr. Pullara and McReynolds confirm the limited contacts. Dr. Pullara had one telephone conversation with an Illinois resident, Dr. Elyea, regarding Kinslow's medical condition and transfer to New Mexico. Pullara Aff. at ¶¶ 4, 5. The call was initiated by Dr. Elyea, not Dr.

8

Pullara. *Id.* at ¶ 4. Dr. Pullara then contacted McReynolds, a staff member located in New Mexico, who monitors and supervises prisoner transfers. *Id.* at ¶ 6; McReynolds Aff. at ¶ 3. McReynolds contacted her Illinois counterparts by phone on two occasions in September and October 2004. McReynolds Aff. at ¶¶ 6, 9. The first call was to McNeill and McCarthy-Smith advising them that Kinslow would be transferred; the second was to McCarthy-Smith regarding the transfer. *Id.* The New Mexico defendants made no further contacts with anyone from Illinois and took no further action regarding Kinslow's transfer. *Id.* at ¶ 9; Pullara Aff. at ¶ 6. Aside from being McReynolds' supervisor, Sedillo appears to have had no role in Kinslow's transfer and no contacts with Illinois. Kinslow does not challenge the veracity of the New Mexico defendants' affidavits.

Given defendants' scant contacts with Illinois, they could not have foreseen being haled into an Illinois court. Their Illinois-related activities were simply not significant and created no continuing obligations with respect to this litigation. *See Purdue*, 338 F.3d at 780. Under these circumstances, the New Mexico defendants are not amenable to Illinois jurisdiction. *Id.* at 786; *see also Sanders v. United States*, 760 F.2d 869, 872 (8th Cir. 1985) (no minimum contacts where prison personnel did not transfer plaintiff); *Hodgson v. Miss. Dep't of Corr.*, 963 F. Supp. 776, 796 (E.D. Wis. 1997) (even if defendants personally handled requests to transfer poisoners, that was not enough to purposefully avail themselves of privilege of conducting activities in Wisconsin or reasonably lead them to anticipate being haled into Wisconsin district court).

Kinslow's reliance on *Calder v. Jones*, 465 U.S. 783, 789-90 (1984), is misplaced. Kinslow argues *Calder* compels a finding of personal jurisdiction because the New Mexico defendants' conduct was directed at him. *Calder* found jurisdiction where the defendant committed an intentional tort knowing that plaintiff would be injured. 465 U.S. at 788-89. However, *Calder* did

not make a "dramatic change in the due-process analysis." *Wallace v. Herron*, 778 F.2d 391, 395 (7th Cir. 1985). Rather, it enunciated "merely another way if assessing the defendant's relevant contacts." *Id.* The "constitutional touchstone remains whether the defendant[s] purposefully established minimum contacts in the forum State." *Burger King*, 471 U.S. at 474. Three phone calls within a month, including one not initiated by defendants, do not establish contacts with Illinois necessary to provide jurisdiction. Kinslow's contention that defendants' actions were directed at him does not trump that finding. Moreover, *Calder* is distinguishable on the facts because the defendant in that case had more extensive contacts than established here. 465 U.S. at 788-89 (in libel suit, effects of intentional tort provided jurisdiction in California, which was focal point of the story and the location where plaintiff's harm was suffered). Therefore, Kinslow fails to establish the court has jurisdiction over the New Mexico defendants. Accordingly, the court will not address their additional grounds for dismissal.

## B.  Failure to Plead Deliberate Indifference

The Illinois defendants argue the amended complaint must be dismissed because it does not adequately plead deliberate indifference. Specifically, they contend they relied on other medical professionals to determine Kinslow's medical condition and treatments, and they had no personal involvement in the transfer. According to defendants, this precludes liability because Kinslow cannot allege they acted with the requisite knowledge. To prove a deliberate indifference claim under § 1983, a prisoner must show "(1) he had a serious medical need, and (2) the defendants were deliberately indifferent to it." *Farmer v. Brennen*, 511 U.S. 825, 834-37 (1994); *see also Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference exists when an official knows of and disregards a serious medical condition, *i.e.*, the official is "aware of facts from which the

10

inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id.* at 837.

The Illinois defendants' arguments ignore Rule 8(a)'s liberal pleading standards. Kinslow is not required to plead any particular facts, including defendants' knowledge, to state a § 1983 claim. *See Simpson*, 450 F.3d at 305-06. All he is required to do is provide a plain statement that puts defendants on notice of his claim for relief. *Id.* The amended complaint alleges the Illinois defendants knew Kinslow had a serious medical condition, that he was undergoing weekly treatments, and that interrupting the treatments for a cross-county transport could compromise his medical condition. Am. Compl. at ¶¶ 28-34. Despite this, defendants planned and arranged for Kinslow's transfer without ensuring refrigeration for his medication and that proper medical care was available during the trip; as a result, Kinslow suffered harm. *Id.* at ¶¶ 28-34, 60. This is more than enough to plead a deliberate indifference claim. *See Sweirkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-15 (2002); *Farmer*, 511 U.S. at 834-37. Defendants may be correct that Kinslow will be unable to sustain his allegations on summary judgment or at trial. But that is an issue for another day. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ("[i]ndeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test"). At this stage, Kinslow meets the liberal pleading requirements by adequately putting defendants on notice of his deliberate indifference claim. None of the cases cited by defendants suggest a different result. *See McEachern v. Civiletti*, 502 F. Supp. 532, 533 (N.D. Ill. 1980) (Aspen, J.) (summary judgment case); *Williams v. Cearlock*, 993 F. Supp. 1192, 1993 (C.D. Ill. 1998) (Mills, J.) (same); *Durmer v. O'Carrol*, 991 F.2d 64, 69 (3d Cir. 1993) (same).

Even if the amended complaint is sufficient under Rule 8(a), Kinslow can plead himself out of court by alleging facts defeating his claim. *See Thomas*, 31 F.3d at 558-59. The Illinois defendants contend Kinslow does so by alleging he is under the care of a prison doctor and nurse, who approved the transfer and determined ice for his medication was adequate. The prison doctor identified is Dr. Elyea, one of the Illinois defendants. In other words, defendants argue that Walker, McNeill, and McCarthy-Smith are absolved from liability based on Kinslow's allegations that Dr. Elyea approved the transfer. Dr. Elyea, in turn, has no liability based on allegations that a nurse provided Kinslow with a container of ice. These arguments, aside from being somewhat farfetched, miss the point. The thrust of Kinslow's claim is that defendants *personally knew* of his medical condition and disregarded a substantial risk by transporting him without ensuring proper care. Am. Compl. at ¶¶ 31-33. These allegations must be deemed true. *See Cler*, 423 F.3d at 729. Whether defendants can rely on the judgment of other medical providers despite their own knowledge of Kinslow's condition is not an issue to be decided on a motion to dismiss. The allegations are not inconsistent with Kinslow's theory of liability against the Illinois defendants. Therefore, the amended complaint does not plead Kinslow out of court.

### C. Defense of *Res Judicata*

The Illinois defendants also move to dismiss on the ground that Kinslow is barred from bringing suit. According to defendants, Kinslow filed two previous lawsuits regarding his prison medical care. *See Kinslow v. Addus Healthcare, et al.*, No. 1:04-cv-00039 (N.D. Ill.) (Conlon, J.); *Kinslow v. Snyder, et al.*, No. 3:01-cv-00466 (S.D. Ill.) (Hernden, J.). He entered into a settlement agreement dismissing both suits. Now, he is unhappy with the settlement and is attempting to avoid

the consequences of his agreement. Defendants contend that because Kinslow settled claims related to his medical care, his is barred by the doctrine of *res judicata* from initiating this suit.

The Illinois defendants' argument is premature. As the court explained in a prior opinion in this case, affirmative defenses are not appropriately raised in a motion to dismiss. *See Kinslow v. TransCor America, LLC*, No. Civ. A. 06 C 4023, 2006 WL 2927605, at *3 (N.D. Ill. Oct. 10, 2006) (Conlon, J.). Defendants have the burden of pleading and proving defenses. *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 2002). Kinslow is under no obligation to anticipate, or plead in anticipation of, an opposing party's possible defenses. *See Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). *Res judicata* is an affirmative defense. FED. R. CIV. P. 8(c); *see also United States Gypsum Co. v. Ind. Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003) (affirmative defenses do not provide grounds to dismiss claims under Rule 12(b)(6)); *Richardson v. Bank*, No. 05 C 5629, 2006 WL 1994574, at *1-2 (N.D. Ill. July 13, 2006) (*res judicata* is an affirmative defense plaintiff need not plead around to survive a motion to dismiss). The amended complaint references Kinslow's other lawsuits, Am. Compl. at ¶ 18, but it does not admit facts necessary to establish a *res judicata* defense. *See Kratville v. Runyon*, 90 F.3d 195, 197-98 (7th Cir. 1996) (*res judicata bars* subsequent suits in federal court when there exists: (1) an identity of the causes of actions; (2) an identity of the parties or their privies; and (3) a final judgment on the merits). Therefore, this case is not barred.

### D.     Failure to Plead Custom or Policy

Kinslow's original complaint failed to allege TransCor's employees acted pursuant to a custom or policy, a prerequisite to establishing § 1983 liability of a corporation acting under color of state law. *See Kinslow*, 2006 WL 297605, at *5. The court dismissed TransCor because the

13

complaint "contain[ed] no allegations suggesting TransCor's custom or policy caused Kinslow's lack of medical treatment." *Id.* TransCor moves to dismiss the amended complaint on the same grounds. It contends the present complaint adds only boilerplate allegations that are insufficient to survive a motion to dismiss. Kinslow argues the complaint satisfies the minimum requirements of notice pleading.

In *Monell v. New York City Dep't of Soc. Servs.*, the Supreme Court held that a private corporation acting under color of state law cannot be liable for a § 1983 violation on a theory of *respondeat superior*. 436 U.S. 658, 690-91 (1978). Instead, the corporation's policies or customs, not the independent acts of its employees, must be the source of the violation. *See McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995). There are three ways a plaintiff can allege a corporation's policy or custom violated his constitutional rights: (1) an express policy caused the constitutional deprivation; (2) a widespread practice that, although not authorized by written law, is so permanent and well settled it constitutes a custom or usage with the force of law; and (3) by alleging the constitutional injury was caused by a person with final policy making authority. *Id.*; *Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 735 (7th Cir. 1994) (superceded by statute on unrelated issue).

The amended complaint adds fifteen new defendants and a series of new allegations. The newly added defendants are all alleged to be TransCor employees. Am. Compl. at ¶¶ 12, 13. Identified as "transport" or "planning" defendants, they allegedly were present on the bus during Kinslow's transport or were responsible for planning and supervising the interstate trip. *Id.* at ¶ 13. The planning defendants allegedly knew Kinslow suffered from a severe medical condition requiring in-transit treatment. *Id.* at ¶ 35. Yet they failed to arrange for refrigeration for Kinslow's

medication, medical staff to administer his injections, or emergency medical services. *Id.* at ¶¶ 35, 36. In addition, they were responsible for extending Kinslow's transport from approximately twenty four hours to six full days. *Id.* at ¶ 37. The transport defendants told Kinslow to administer his own PegIntron injection, dumped his Rebutol pills on the floor, and refused to provide him other medication and a proper diet and water. *Id.* at ¶¶ 40, 42, 44, 54-57. When he suffered a severe negative reaction, the transport defendants ignored the serious medical risk and refused to find a doctor. *Id.* at ¶¶ 40, 46, 49. According to Kinslow, one or more of the planning defendants was "authorized to make final decisions regarding prisoner transport, the equipment used for transport, and the provision of medical care." *Id.* at ¶ 38. The complaint alternatively pleads that TransCor "has a policy, or custom and practice, of failing to provide for the medical treatment of prisoners suffering from serious illness during transport." *Id.* at ¶ 39.

These allegations are sufficient to allege TransCor's policy or custom caused Kinslow's constitutional harm. Although the allegations specific to policy or custom are cursory, that is enough to put TransCor on notice of the claims against it. In *McCormick v. City of Chicago*, the plaintiff alleged similar conclusory allegations, which were "designed to get him over the pleading bar for [a] municipal liability claim." 230 F.3d 319, 324 (7th Cir. 2000) (acknowledging the "common practice" of pleading cursory allegations to satisfy Rule 8(a)). The court found a "smattering of phrases" identifying a policy or custom was enough to "withstand scrutiny under liberal notice pleading." *Id.* Kinslow pleads essentially the same level of detail here. The allegations are admittedly scant, but they provide adequate notice. *See Simpson*, 450 F.3d at 305-06. The cases TransCor cites are inapposite because they address motions for summary judgment, *Rasche v. Vill. of Beecher*, 336 F.3d 588, 590 (7th Cir. 2003), or implicitly bolster Kinslow's claims. *See Baskin*

15

*v. City of Des Plaines*, 138 F.3d 701, 705 (7th Cir. 1998) (holding plaintiff must allege city employee had final policymaking authority to survive a motion to dismiss). The second amended complaint cures the deficiencies of the prior complaint and states a claim against TransCor.

## CONCLUSION

For the reasons set forth above, Dr. Frank Pullara's, Erma Sedillo's, and Shannon McReynolds' motion to dismiss for lack of personal jurisdiction is granted, and they are dismissed without prejudice. The motions to dismiss of Dr. Willard Elyea, Roger Walker, Edward McNeill, Daria McCarthy-Smith, and TransCor America, LLC are denied.

ENTER:

Suzanne B. Conlon
United States District Judge

December 1, 2006